UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEAR BLUE SPECIALTY INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>  v.<br><br>RAMI KARIMI, et al.,<br><br>  Defendants. | Case No. 24-cv-07351-LJC<br><br>**ORDER GRANTING MOTION TO STAY**<br><br>Re: Dkt. No. 17 |

Before the Court is Defendant Rami Karimi's motion to stay this action for declaratory relief and reimbursement. In this lawsuit, Plaintiff Clear Blue Specialty Insurance (Clear Blue) has sued Defendants Jonathan Chong and Gregorio Castro, in addition to Karimi, and Chong and Castro have joined Karimi's stay motion. ECF Nos. 17, 21. Clear Blue opposed the motion, and Karimi filed a reply. ECF Nos. 28, 29. A hearing was held on February 25, 2025, which counsel for all parties appeared. ECF No. 37.[1] Having considered the briefing and arguments, the Court **GRANTS** Defendants' Motion to Stay and orders the parties to file a joint status report in six months' time regarding the necessity of lifting the stay.

**I.   BACKGROUND**

**A.   The Construction Accident**

The claims in this lawsuit arise from the construction of a tennis court. Warson Industries Holdings, LLC (Warson) owns real property located at 135 Karen Way, Atherton, California (Property). ECF No. 1 (Compl.) ¶ 8. The Property consists of a single-family home and an

---

[1] After the hearing, Clear Blue amended their complaint to add Property & Casualty Insurance Company of Hartford, Insurance Company of the West, Warson Industries Holdings, LLC, Saviano Company, Inc., and United Concrete Pumping, LLC as defendants. ECF No. 39.

adjacent vacant lot. *Id.* At some point in early 2022, Warson hired Defendant Rami Karimi, doing business as Karimi Construction (Karimi), as the general contractor to build a tennis court on the vacant lot at the Property. *Id.* ¶ 9. In May 2022, Karimi allegedly retained Saviano Company, Inc. (Saviano) to help construct the tennis court, and, in turn, Saviano retained United Concrete Pumping, Inc. (United) to pour the concrete for the tennis court. *Id.* ¶ 10.[2] Karimi disputes these allegations and claims that Warson "had a separate contractual relationship with its architect" who was responsible for "hiring Saviano to build its tennis court." ECF No. 29 at 8. "Saviano then hired United Concrete to pour the concrete for the tennis court." *Id.* In June 2022, Karimi retained Wayne Ting & Associates, Inc. (Ting) as the geotechnical consulting company for the tennis court construction. Compl. ¶ 11.

On August 24, 2022, construction of the tennis court was underway. *Id.* ¶ 14. United was using a concrete truck to pour concrete for the tennis court's foundation. *See id.*; ECF No. 18 at 15. When the concrete truck's boom arm was fully extended, the truck sank into the ground and tipped over, causing the boom arm to hit Castro, a United employee, and Chong, a Ting employee. *Id.* Both Castro and Chong were seriously injured. *See* ECF No. 18 at 7, 17.

### B.     The Underlying Litigation

A web of litigation in state court ensued; two personal injury actions and two insurance subrogation actions were filed. Chong sued Warson, Karimi, Saviano, and United for negligence in San Mateo Superior Court, case number 24-CIV-04937. *See* ECF No. 18 at 4. Castro sued United, Warson, Karimi, and Ting for negligence; negligent hiring, training, and supervision; and premises liability in San Mateo Superior Court, case number 24-CIV-4994. *See id.* at 12. At the time of the accident, Ting had a workers' compensation insurance policy from Property & Casualty Insurance Company of Hartford (Hartford). Chong filed a claim for workers' compensation against Hartford, which obligated Hartford to pay benefits to Chong. ECF No. 18 at 23-24; ECF No. 17 at 6. Hartford sued United in San Mateo Superior Court seeking reimbursement of the workers' compensation benefits Hartford paid Chong, case number 23-CIV-

---

[2] The Complaint identifies this company as United Concrete *Plumbing*, Inc., not United Concrete Pumping, Inc. Compl. ¶ 10. This appears to be a typographical error.

2

05598. Saviano had a workers' compensation insurance policy from Insurance Company of the West (West). After Castro was injured, he filed a claim for workers' compensation against West, obligating West to pay benefits to Castro. ECF No. 17 at 6. West sued United in San Mateo Superior Court, seeking reimbursement for the benefits West paid Castro, case number 24-CIV-04680.[3]

At the time of the accident, Karimi had a commercial general liability insurance policy (the Policy) with Clear Blue. Compl. ¶ 17. After Chong and Castro sued Karimi, Karimi tendered defense of the personal injury lawsuits to Clear Blue. Clear Blue began defending Karimi pursuant to the Policy, subject to a reservation of rights including the right to "seek reimbursement of defense fees[.]" *Id.* ¶¶ 38-39.

### C. Clear Blue's Claims Against Karimi

Clear Blue proceeded to file the instant federal action, seeking reimbursement for costs incurred defending Karimi in the Underlying Actions and a "declaration that the claims alleged in the Underlying Lawsuits are not covered under the Policy." *Id.* at 12. Clear Blue named Castro and Chong as defendants in the action "solely for the purpose of binding [them] to any judgment rendered" on Clear Blue's request for declaratory judgment. *Id.* ¶¶ 4-5.[4] Clear Blue alleges that the classification limitations and exclusions of the Policy preclude coverage. Specifically, it alleges that coverage under the Policy "is specifically limited" to "Carpentry Interior" and "Carpentry-NOC [Not Otherwise Classified] (including remodeling and framing)" and that "[n]o coverage is provided for any classification code or operation performed by [Karimi] not specifically listed" in the Policy. Compl. ¶¶ 20-21. Clear Blue asserts, "The construction of a tennis court or pouring of concrete for the same does not fall within either" the Carpentry Interior or the Carpentry-NOC (including remodeling and framing) classifications and thus the claims in the Underlying Actions are precluded from coverage. *Id.* ¶ 30.

Clear Blue next contends that the Policy does not cover bodily injury to "An employee,

---

[3] The Court refers to these four lawsuits as the Underlying Actions. The Court refers to the lawsuit currently before it as the instant action or the Coverage Action.
[4] Clear Blue has since named Hartford, West, Warson, and United as defendants for the same purpose. *See* ECF No. 39 (Am. Compl.) ¶¶ 6-10.

3

temporary worker, independent contractor or subcontractor of any insured or employee of any independent contractor or subcontractor" arising out of and during the individual's employment or performance of duties related to Karimi's business. *Id.* ¶ 22 (quotations omitted).  It alleges that this provision precludes coverage because Chong and Castro were the employees of independent contractors, Ting and Saviano, retained by Karimi.  *Id.* ¶ 31.

Clear Blue further alleges that the Policy excludes coverage for bodily injury or personal injury "arising out of or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, whether arising from natural causes or resulting from operations of the Named Insured or any other subcontractor of the Named Insured." *Id.*  ¶ 23.  It claims that because the injuries in the Underlying Actions were allegedly caused by the concrete truck sinking into "unstable soil[,]" this exception applies and precludes coverage. *Id.* ¶ 32.

The Policy also includes a requirement that, in order for it to cover any claim for damage caused by Karimi's independent contractors, Karimi must have "a written indemnity agreement" from each independent contractor and "certificates of insurance and additional insured endorsements from the independent contractor showing" Karimi is named as an additional insured on the "independent contractor's commercial generally liability insurance[.]" *Id.* ¶ 24.  Clear Blue alleges that Karimi retained Ting and Saviano as independent contractors, "but failed to obtain written indemnity agreements and failed [to] be added as an additional insured under their respective liability policies." *Id.* ¶ 33.  As Karimi failed to satisfy this condition precedent, the Policy precludes coverage for damage caused by their work.  *See id.*

Lastly, Clear Blue alleges that the Policy does not apply to bodily injury arising out of "New Construction of a dwelling and work within, or on, the premises of a dwelling prior to the certificate of occupancy of the owner[.]"  *Id.* ¶ 25.  "Clear Blue contends that as the Project is new construction of a tennis court on premises of a dwelling[,]" this exception precludes coverage for the claims in the Underlying Actions. *Id.* ¶ 34.

Karimi proceeded to file a motion to dismiss Clear Blue's action for failure to join necessary parties or, in the alternative, to stay the lawsuit pending resolution of the Underlying

1  Actions, which Chong and Castro joined.  ECF Nos. 17, 21.[5]  ECF No. 18.  At the hearing, the

2  Court denied the motion to dismiss without prejudice, based on Clear Blue's representation that it

3  would add all parties who asserted claims against Karimi in the Underlying Actions as defendants

4  to this lawsuit, and took the motion to stay under submission.

## II.    ANALYSIS

### A.    Legal Standard

"[F]ederal courts sitting in diversity … apply state substantive law and federal procedural law."  *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007) (citing *Erie v. Tompkins*, 304 U.S. 64 (1938)).  "Because a stay of an action is procedural, not substantive," the Court follows federal law in ruling on Karimi's motion to stay.  *United Specialty Ins. Co. v. Bani Auto Grp., Inc.*, No. 18-cv-01649, 2018 WL 5291992, at *4 (N.D. Cal. Oct. 23, 2018).

The Supreme Court addressed when courts may stay an action in *Landis v. North American Company*, 299 U.S. 248 (1936).[6]  "[T]he power to stay proceedings is incidental to the power

---

[5] Karimi filed a request for judicial notice with his motion.  Karimi requests that the Court take judicial notice of the complaints in the four Underlying Actions, filed as Exhibits 1 through 4 to ECF No. 18, and "four docket sheets" from the Underlying Actions, allegedly filed as Exhibit 5.  ECF No. 18 at 1.  There is no "Exhibit 5" attached to his request for judicial notice.  *See id.* at 30.  The Court denies Karimi's request to take judicial notice of these missing documents.  The Court grants Karimi's request to take judicial notice of the Complaints in the Underlying Actions, as such "documents on file in federal or state courts" are "undisputed matters of public record" "whose accuracy cannot reasonably be questioned."  *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012); Fed. R. Evid. 201(b).

[6] The Court recognizes that the Supreme Court, in *Brillhart v. Excess Insurance Company* and later in *Wilton v. Seven Falls Company*, addressed when a district court may exercise its discretion to stay or decline jurisdiction over an action brought under the Declaratory Judgment Act when there is a parallel state court proceeding.  *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494-95 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-83 (1995).  Following *Brillhart* is appropriate where an action is solely for declaratory relief, not where an action includes both a request for declaratory relief and independent "claims that would continue to exist if the request for a declaration simply dropped from the case."  *Snodgrass v. Provident Life and Acc. Ins. Co.*, 147 F.3d 1163, 1168 (9th Cir. 1998).  As Clear Blue's action is for declaratory relief and reimbursement, it is improper to apply the *Brillhart* analysis.  *See United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001) (holding that requests for reimbursement may be independent of a request for declaratory relief); *Bani Auto*, 2018 WL 5291992, at *4 (declining to dismiss or stay an action under *Brillhart* where there were "mixed declaratory relief claims and independent claims"); *United Specialty Ins. Co. v. Meridian Mgmt. Grp., Inc.*, No. 15-cv-01039, 2016 WL 1534885, at *1 (N.D. Cal. Apr. 15, 2016) (applying *Landis* rather than *Brillhart* to a declaratory relief and reimbursement action, as the *Brillhart* analysis "is limited to actions that seek only declaratory relief").

inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 245-55. Applying *Landis*, the Ninth Circuit identified three factors to consider when deciding whether to grant a stay:

> [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). If there is a "fair possibility" that staying the action would damage a nonmovant, the movant must show "a clear case of hardship or inequity" if the matter is not stayed. *Landis*, 299 U.S. at 255. The party requesting the stay has the burden of establishing its necessity. *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

### B. *Landis* Analysis

#### 1. Hardship to Clear Blue if the Coverage Action is Stayed

At the first step of the analysis, courts consider the risk of prejudice to the nonmovant if the matter is stayed. *See CMAX*, 300 F.2d at 268-69. A "delay in … monetary recovery" is not a cognizable harm to the nonmoving party. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

Clear Blue argues that it would "suffer damages from being forced to incur further defense fees and costs in a matter in which it had no obligation to defend." ECF No. 28 at 15. But it is defending Karimi in the Underlying Actions under "a reservation of rights, including the right to seek reimbursement of defense fees and costs[.]" Compl. ¶ 39. If the Court stays the Coverage Action pending resolution of the Underlying Actions, and, upon their conclusion, lifts the stay and determines the Coverage Action in Clear Blue's favor, Clear Blue will be able seek reimbursement from Karimi for its defense costs. That there may be a "delay" in Clear Blue's ability to seek reimbursement is not the type of harm recognized under *Landis*, as the Court views a claim for

.

reimbursement akin to a claim for money damages. *Lockyer*, 398 F.3d at 1110; *CMAX*, 300 F.2d at 269 (holding that a delay in recovery of "money damages…is not the kind of prejudice which should move a court to deny a requested postponement"); *see Meridian*, 2016 WL 1534885, at *2 ("[Plaintiff] USIC is currently defending Meridian under a reservation of rights…if the Coverage Action ultimately is determined in USIC's favor, USIC will be able to recover the costs and fees of defending Meridian after the underlying action is resolved."). Clear Blue urges the Court to follow *Evanston Insurance*, where the Central District found that the insurer faced a "continuing harm" absent a stay as it would have to make "ongoing payments to defend [the insureds] in the state court actions." *Evanston Ins. Co. v. Keepers Fin. Corp.*, No. CV 11-01107, 2011 WL 13220156, at *6 (C.D. Cal. Oct. 13, 2011); *see* ECF No. 28 at 15. The Court declines to do so and holds that, as Clear Blue is defending Karimi with a reservation of rights and may seek reimbursement for defense costs, a delay in seeking such reimbursement caused by a stay does not constitute the type of harm recognized under *Landis*.

        Clear Blue concedes that while it in theory will be able to seek reimbursement from Karimi, in practice there is "a fair possibility of harm" because Karimi "may [be] held liable in the underlying action[s], which would affect its ability to repay those costs advanced by the insured." ECF No. 28 at 15. This risk is presumably present in every request to stay an insurance coverage declaratory relief action, but courts rarely find it weighs in favor of a stay. *See Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-cv-05345, 2019 WL 570760, at *5 (N.D. Cal. Feb. 12, 2019); *State Nat'l Ins. Co., Inc. v. US-SINO Inv., Inc.*, No. 13-cv-05240, 2015 WL 5590842, at *5 (N.D. Cal. Sept. 23, 2015) (noting that providing a defense to an insured, despite disputes over coverage, "is part of an insurer's obligation and cost of doing business"). Clear Blue's argument is moreover at this point speculative, as it "presuppose[s] success on the merits" of Clear Blue's claims in this action and the plaintiffs' success on the merits in the Underlying Actions against Karimi. *Philadelphia Indem. Ins. Co. v. Talega Maint. Corp.*, No. 23-cv-00466, 2023 WL 8191139, at *3 (C.D. Cal. July 21, 2023). It further assumes, without any basis in the record, that Karimi will be unable to repay defense costs and does not have any other insurance to cover such costs. The Court finds that such speculative harm to Clear Blue does not "weigh against granting a stay." *Id.*;

7

*see Hanover Ins. Co. v. Mason Mcduffie Real Est., Inc.*, No. 16-cv-01114, 2016 WL 7230868, at *3 (N.D. Cal. Dec. 14, 2016) (characterizing the risk of harm to the insurer as "uncertain" as it depended on the insurer "prevailing in the Instant Action, an issue the Court has not yet reached").

### 2. Hardship to Defendants if Action is Not Stayed

Following *CMAX*, courts must balance the harm to the nonmovant if the matter is stayed with the harm to the moving parties if the matter is not. 300 F.2d at 268. "[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity" under *Landis*. *Lockyer*, 398 F.3d at 1112 (quotations omitted).

Karimi argues that he would "suffer significant harm if the motion to stay is denied" as he would have to "fight a two-front war" against Clear Blue in this lawsuit and against the plaintiffs and co-defendants in the Underlying Actions. ECF No. 17 at 15. First, he argues that defending the current action would force him "to expend resources fighting its own insurer, thereby undercutting one of the primary reasons for purchasing liability insurance." ECF No. 29 at 7 (cleaned up); *see* ECF No. 17 at 5. Second, he argues that he would be prejudiced if he had "to take contrary positions to those taken" in the Underlying Actions, which could result in "collateral estoppel and negatively impact … the issue of vicarious liability in those actions." ECF Nos. 29 at 7, 9; 17 at 11-12.

Denying the stay would force Karimi to spend time litigating the Underlying Actions while also defending this one. But this will always be a harm to the movant in a motion to stay, and "being required to defend" a lawsuit absent a stay, without more, "does not constitute a clear case of hardship or inequity within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112 (citations omitted). "Moreover, any difficulty posed by simultaneously defending two proceedings is alleviated" because Clear Blue is currently defending Karimi in the Underlying Actions. *Great Am. Assurance Co. v. M.S. Indus. Sheet Metal, Inc.*, No. SACV 11-754, 2011 WL 13228037, at *3 (C.D. Cal. Sept. 22, 2011). The Court finds Karimi's argument that it may be forced to take inconsistent positions more convincing. For example, to prevail in this action, Karimi will presumably advance arguments that the work he did on the Project could be covered by the Policy. In contrast, in the Underlying Actions, Karimi will presumably attempt to minimize his role in the

8

Project to avoid liability. "The need to take conflicting positions could thus cause prejudice absent a stay." *Bani Auto*, 2018 WL 5291992, at *6.

Most convincing is the harm to Defendants Chong and Castro, who joined Karimi's motion for a stay. ECF No. 21. In *Bani Auto*, the Northern District discussed the potential prejudice to the Wrights, the plaintiffs in the underlying liability action who had been named as defendants by the insurer in the coverage action:

> The Wrights are not the insured, but USIC has named them in this action nonetheless. While the need for the insured to fight a two-front war is a questionable source of prejudice, the need for the plaintiffs in the underlying action to fight such a war or to face issues of collateral estoppel is more substantial because it deprives them of the right to have factual issue[s] adjudicated in their chosen forum—state court. The Wrights chose to bring their tort suit in state court but are now being forced to reallocate resources from that action to this federal action. This prejudice is even more stark when the Court considers that this action has little, if anything, to do with the Wrights at all. Thus, the Wrights would suffer substantial prejudice should this action not be stayed.

*Bani Auto*, 2018 WL 5291992, at *6 (cleaned up). The same analysis applies to Chong and Castro. They are not the insured and were named in the action only so that they would be bound by the Court's coverage determination. They will be "forced to reallocate resources" from their state court actions to defending this one. *Id.* Not staying this action will deprive "them of the right to have factual issues adjudicated in their chosen forum—state court." *Id.* There is also the risk that, absent a stay, they may need to take inconsistent positions: in the Underlying Actions, they likely will be arguing that Karimi was liable for their injuries based on his role as the general contractor of the Project. Here, they will likely need to align themselves with Karimi, presumably arguing that he was not acting as the general contractor such that the policy exclusions precluding coverage for injuries to or caused by his subcontractors would not apply. Similarly, they presumably intend to argue in the Underlying Actions that their injuries were caused in part by the subsidence of land, which Karimi or other defendants knew or should have known about and prevented. *See* ECF No. 18 at 16, ¶¶ 18-20. Advocating for a similar position here runs counter to their interests, as the Policy does not cover bodily injuries caused by the subsidence of land. The Court accordingly finds that Defendants Chong and Castro would "suffer substantial prejudice

9

should this action not be stayed." *Bani Auto*, 2018 WL 5291992, at *6; *see Houston Cas. Co. v. Elks Constr., Inc.*, No. 23-cv-03645, 2023 WL 7167146, at *3 (N.D. Cal. Oct. 30, 2023) ("Courts have found prejudice exists when the injured party is forced to defend a federal insurance coverage dispute in which it is not the insured…given that such plaintiffs-turned-defendants are forced to reallocate resources from the state action to the federal action, where the issues have little, if anything to do with the injured party at all[.]") (cleaned up).

Given that the risk of harm to Clear Blue is speculative and insufficient to establish prejudice under *Landis*, the balance of the hardships between the parties weighs in favor of granting a stay. Moreover, "[e]ven assuming the potential prejudice to both sides is comparable, any doubt should be resolved in favor of the insured." *Hanover*, 2016 WL 7230868, at *3.

### 3. The Orderly Course of Justice

The Court next evaluates how granting a stay would impact the "orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law[.]" *CMAX*, 300 F.2d at 268. The "key question" is whether the district court "would have to make factual and legal determinations in this case that would overlap with factual and legal determinations that the state court must make in the" separate proceedings. *Bani Auto*, 2018 WL 5291992, at *6. "[E]xact factual and legal similarity is not required." *Meridian*, 2016 WL 1534885, at *2; *see Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (holding that a court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule…does not require that the issues in such proceedings are necessarily controlling of the action before the court").

Karimi argues that there are "factual disputes in the Underlying Actions (i.e., Defendant's alleged liability) [that] must be determined before full relief can be granted in the Coverage Actions" and that a stay is thus warranted. ECF No. 17 at 15. He explains:

> [T]he application of each of Clear Blue's asserted exclusions requires resolutions of issues of *fact*, not law: what was the cause of the accident; who performed what work?; who was responsible for the condition of the site; in what capacity (employee, independent contractor, subcontractor) did Chong and Castro act?; how about the

10

companies they worked for?

ECF No. 17 at 11. Clear Blue argues that Karimi "has failed to allege what factual issues are going to be litigated in the Underlying Actions that supposedly overlap with the sole issue to be tried in this insurance coverage action." ECF No. 28 at 12. It contends that the present action "hinges upon the interpretation" of the insurance policy's exclusion provisions, which is entirely independent from the determinations of liability in the Underlying Actions. *Id.* at 13.

While Karimi's argument is not a model of clarity, the Court nonetheless finds it persuasive, and, in concert with the risk of prejudice to Defendants, sufficient grounds to grant the stay. A threshold determination this Court will have to make is if Karimi's involvement in the Project fits into the "Carpentry-NOC (including remodeling and framing)" classification such that the Policy covers his work. Compl. ¶¶ 20-21. The Court will have to interpret the relevant Policy provisions. There will presumably be factual disputes regarding whether, as Clear Blue alleges, the Policy was issued to Karimi "based upon Karimi's representation that he only performed residential and commercial kitchen and bath remodeling, repairs and additions, and does not perform any new construction." *Id.* at ¶ 18. Karimi's counsel challenged this at the hearing, arguing that Karimi told Clear Blue's agent what type of work he would be doing on the Project and the agent provided an insurance policy that fit this description. This dispute will likely be resolved in the Coverage Action and does not overlap with factual disputes in the Underlying Actions. But the Court will also have to determine if Karimi's role in the Project fits within the classification. And Karimi's role in the Project—what work he was carrying out and supervising, the relationships between Karimi, Warson, Saviano, and United—are factual issues that will presumably need to be resolved in the Underlying Actions to determine liability. Such factual determinations (for example, a determination that Karimi did or did not retain Saviano) would clearly "bear upon" the resolution of this case. *Levya*, 593 F.2d at 863.

Similarly, Clear Blue seeks a determination from this Court that the Policy does not apply because it excludes coverage for bodily injury to employees of Karimi's independent contractors and for injury caused by Karimi's independent contractors if Karimi does not have the necessary indemnity agreement and insurance endorsement with that contractor. Compl. ¶¶ 22, 24. Clear

11

Blue argues that there is no factual dispute that Karimi "was the general contractor" for the Project and "retained Saviano[,]" and thus determining if these exclusions applies hinges solely "upon the interpretation of a policy provision." ECF No. 28 at 13. But there is a factual dispute: Karimi "asserts that Warson, the landowner, had a separate contractual relationship with its architect who then approved the owner hiring Saviano to build its tennis court. Saviano then hired United Concrete to pour the concrete for the tennis court."[7] ECF No. 29 at 8. The nature of Karimi's relationship with Saviano and Saviano's role in the Project will determine if these exclusions apply. Again, the Court anticipates that the relationships between the various parties and who was responsible for what parts of the Project are the types of factual determinations that will be addressed in the Underlying Actions to determine liability.

Perhaps the most straightforward illustration of the overlapping factual issues that warrant a stay under *Landis* relate to the Policy's subsidence of land exclusion. The Policy does not cover injury "arising out of or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting[.]" Compl. ¶ 23. In his Underlying Action, Castro alleges that the concrete pump truck "tipped over due to unstable soil conditions on the property, improper use of the concrete pump truck and/or other construction equipment, inappropriate placement or positioning of the concrete pump truck, and/or incorrect set up of the concrete pump truck[.]" ECF No. 18 at 16, ¶ 18. There will presumably need to be a factual determination in the Underlying Actions to determine if the truck tipped over because of "unstable soil" or for one of the other alleged reasons. *Id.* This determination will help "resolve" the applicability of the subsidence of land exclusion in this action. *CMAX*, 300 F.2d at 268.

Clear Blue argues that its duty to defend Karimi is determined by "the allegations in the Underlying Action[s.]" ECF No. 28 at 13. While "a comparison between the allegations of the complaint and the terms of the policy" is a necessary starting point for insurers to determine if they have a duty to defend, this duty "also exists where extrinsic facts known to the insurer

---

[7] To the extent that these are facts raised for the first time in Karimi's reply, the Court accepts Karimi's representation at the hearing that these facts were included to respond to Clear Blue's arguments its opposition and, in its discretion, considers them in ruling on this motion.

12

suggest that the claim may be covered." *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 654 (2005); *Talega*, 2023 WL 8191139, at *5 ("The court also finds persuasive Defendant's rebuttal that Plaintiff's argument appears to be partially the product of the incorrect assumption that coverage is a function of Plaintiff's allegations and nothing more.") (cleaned up).  Karimi has alleged disputed facts that, if true, could conceivably give rise to coverage.  Some of the disputes that will need to be determined here will likely to be resolved in the Underlying Actions. "Should the cases proceed simultaneously, there is a risk of inconsistent results on these disputed questions." *Meridian*, 2016 WL 1534885, at *2; *see Talega*, 2023 WL 8191139, at *5 (finding that, where the "relief sought by Plaintiff" in the coverage action "would require the court to resolve factual issues slated to be determined in the [underlying liability action], the potential for inconsistent rulings favor a stay").  Moreover, given the overlapping factual issues, discovery in the Underlying Actions "could resolve the need for similar discovery in this case." *Bani Auto*, 2018 WL 5291992, at *7.

At the hearing, Clear Blue's counsel argued that this case was analogous to *All Green Electric v. Security National Insurance*, 22 Cal. App. 5th 407, 412 (2018).  There, the insured, All Green, appealed the trial court's grant of summary judgment in favor of the insurer in a declaratory relief action where the insurer successfully argued that a policy exclusion precluded coverage.  *See id.*  The appellate court affirming the ruling, finding that "neither the complaint [in the liability lawsuit] or the purported facts offered by All Green suggest a coverable claim." *Id.* at 415.  The key difference is that the "purported facts" that All Green argued should have triggered the insurer's duty to defend were "denials of liability or evidence of due care that, if true, would also obviate coverage." *Id.*  In contrast, here Karimi's alleged facts—his lack of relationship with Saviano and United, the nature of his work on the Project—would not necessarily "obviate coverage." *Id.*  These factual issues will need to be resolved to determine coverage, and, as discussed, will also likely be at issue in the Underlying Actions.  This accordingly weighs in favor of granting the stay.

### III. CONCLUSION

The Court accordingly finds that the *Landis* factors weigh in favor of staying the action

13

and hereby GRANTS Defendants' motion to stay the action. In six months' time, the parties shall file a status report with the Court regarding the necessity of lifting the stay.

**IT IS SO ORDERED.**

Dated: August 23, 2025

_____
LISA J. CISNEROS
United States Magistrate Judge